IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| C.G. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 23-468-SRF |
| | ) | (Consolidated) |
| ADULT AND PRISON EDUCATION RESOURCES WORKSHOP | ) ) | |
| | ) | |
| Defendant. | ) | |
| DELAWARE DEPARTMENT OF EDUCATION, ADULT AND PRISON EDUCATION RESOURCES WORKSHOP | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| C.G. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER[1]

At Wilmington this **24th** day of **June, 2025**, the court having considered the Delaware Department of Education's ("DDOE") pending motion to dismiss Counts II and IV of C.G.'s counterclaims, (D.I. 27),[2] IT IS ORDERED that the motion to dismiss is DENIED for the following reasons.

1. **Background.** The following facts are taken from C.G.'s counterclaims. (D.I. 23 at 36-69) In January of 2019, C.G. was a pretrial detainee at the Howard R. Young Correctional

---

[1] On July 14, 2024, the parties consented to the jurisdiction of the Magistrate Judge to conduct all proceedings in this case including trial, the entry of final judgment, and all post-trial proceedings. (D.I. 17)

[2] The briefing associated with the pending motion to dismiss is found at D.I. 29 and D.I. 30.

Institution ("Young"). (*Id.* at ¶ 3) At that time, he was eligible for special education and related services under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and he had a right to receive a free and appropriate public education ("FAPE") while he was incarcerated. (*Id.*) C.G. was enrolled in the Adult and Prison Education Resources Workgroup's ("APER") education program from March of 2019 through February of 2020 and from March of 2021 through June of 2023. (*Id.* at ¶ 12)

2. On October 24, 2022, C.G. filed a special education due process complaint against APER, seeking compensatory education and injunctive relief in response to violations of his right to a FAPE. (*Id.* at ¶ 13) C.G. subsequently served APER with subpoenas *duces tecum* and *ad testificandum* issued by the Delaware Secretary of Education, Dr. Mark Holodick. (*Id.* at ¶¶ 73-74) On January 9, 2023, APER confirmed it had produced all existing documents responsive to the subpoena *duces tecum* except for email correspondence. (*Id.* at ¶ 77)

3. The next day, C.G. filed a motion to compel compliance with the subpoena, and APER responded on January 13, 2023 with a motion to quash the subpoena. (*Id.* at ¶ 78) In the motion to quash, APER argued that Dr. Holodick lacked the authority to issue subpoenas for documents and, in the alternative, the request was unduly burdensome. (*Id.* at ¶ 79) The hearing panel denied C.G.'s motion to compel and granted APER's motion to quash the subpoena *duces tecum* on January 17, 2023, finding that the Delaware regulations do not "specifically allow for a records subpoena, only a subpoena for a witness," and there is "no prehearing discovery in IDEA or in Delaware regulation." (*Id.* at ¶ 84)

4. After conducting an evidentiary hearing, the hearing panel issued a decision and order on March 31, 2023 finding that APER violated C.G.'s right to a FAPE. (*Id.* at ¶ 14) C.G. initiated the instant litigation in this court on April 28, 2023 by filing a petition for attorney's

fees as the prevailing party at the administrative hearing. (*Id.* at ¶ 15) On June 28, 2023, APER filed a complaint against C.G. seeking a reversal of the administrative hearing panel's decision. (*Id.* at ¶ 16) The two matters were then consolidated. (*Id.* at ¶ 18)

5. On July 21, 2023, the court ordered the parties' joint stipulation to extend the deadline for C.G. to answer APER's complaint to January 2, 2024. (*Id.* at ¶ 19) C.G. filed its answer and counterclaims in accordance with the stipulated extension, asserting counterclaims against APER and the DDOE for violations of the retaliation and anti-discrimination provisions of Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act. (*Id.* at ¶¶ 107-62) C.G.'s retaliation claims against APER and the DDOE allege that the agencies interfered in C.G's special education due process proceedings by changing the longstanding practice of issuing subpoenas *duces tecum* and allowing the hearing panels to determine the scope of discovery. (*Id.* at ¶¶ 136, 159)

6. **Legal standard.** Rule 12(b)(6) permits a party to seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true in the light most favorable to the plaintiff, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

7. When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiffs. *Umland v. Planco Fin.*, 542 F.3d 59, 64 (3d Cir. 2008). The court may consider only the allegations in the complaint, documents incorporated by reference into the complaint, and matters of which the court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *see also Barrier 1 Sys., Inc. v. RSA Protective Techs., LLC*, C.A. No. 20-340-MN, 2021 WL 4622545, at *1 (D. Del. Oct. 7, 2021) (applying the Rule 12(b)(6) standard to a motion to dismiss counterclaims).

8. **Analysis.** The DDOE argues that Counts II and IV of C.G.'s counterclaims for retaliation under the Rehabilitation Act and the ADA should be dismissed for two reasons. First, the DDOE contends that it was not properly joined as a party to the counterclaims. (D.I. 27 at 1-3) Next, the DDOE alleges that Counts II and IV of the counterclaims fail to state a claim upon which relief can be granted. (*Id.* at 3-9) The court addresses each argument in turn.

9. ***Joinder of the DDOE.*** The DDOE argues that Counts II and IV of C.G.'s retaliation counterclaims should be dismissed because it was not properly joined as a party to the counterclaims. (D.I. 27 at 1-2) In its reply brief, the DDOE acknowledges that a party may be joined to a counterclaim under Federal Rules of Civil Procedure 13(h) and 20(a) if the relief sought against the joined party arises out of the same transaction or occurrence and involves common questions of law or fact. (D.I. 30 at 1) However, the DDOE contends that C.G.'s counterclaims against it remain deficient because they focus on the conduct of the deputy attorneys general representing the DDOE and APER, as opposed to the entities themselves. (*Id.* at 2)

**10.** As a threshold matter, the court finds it difficult to reconcile the DDOE's argument that it is not a party, with the caption and averments in the complaint filed in Civil Action No. 23-702-SRF. The DDOE and APER are effectively blended as the singular "Plaintiff" in the action and aver as follows in the first paragraph:

> Plaintiff is the Adult and Prison Education Resources workgroup of the Delaware Department of Education ("DDOE") within the Executive Branch of the State of Delaware. 14 *Del. C.* § 101. Plaintiff and the Delaware Department of Correction ("DDOC") jointly administer the Prison Education Program. 11 *Del. C.* § 6531A(a).

(C.A. No. 23-702-SRF, D.I. 1 at ¶ 1) Despite these averments in its own pleading, the DDOE now asserts, without reference to the record, that it is an entity separate from APER and is a non-party for purposes of C.G.'s counterclaim. To the extent that such a position is not consistent with its own pleading, it is rejected.

**11.** Regardless of whether the DDOE is considered a "party," there is an additional basis for denying its motion to dismiss for improper joinder because C.G.'s counterclaims against the DDOE and APER arise from the same transaction or occurrence as the underlying due process hearing. C.G.'s retaliation counterclaims are based on the DDOE and APER's alleged interference in the special education due process proceedings. (D.I. 23 at ¶¶ 124-39, 153-62) For example, the counterclaims allege that APER and the DDOE interfered with C.G.'s request for records by changing the DDOE's longstanding interpretation of the law to avoid the production of documents in response to C.G.'s subpoena requests. (*Id.* at ¶¶ 126, 134-36)

**12.** In its reply brief, the DDOE does not meaningfully challenge C.G.'s assertion that his retaliation counterclaims arise out of the same transaction or occurrence. (D.I. 30 at 1) Instead, the DDOE contends that the retaliation counterclaims are directed at the conduct of the Deputy Attorneys General who represented APER and the DDOE, instead of the entities

5

themselves. (*Id.* at 2) The DDOE's position is not supported by the pleaded allegations, which state that "APER and DDOE retaliated against C.G. by using their influence and authority to interfere in the special education due process hearings and change DDOE's own interpretation of the law and decades-old practice of issuing subpoenas *duces tecum* and allowing Hearing Panels to determine the scope of discovery." (D.I. 23 at ¶¶ 136, 159) The counterclaims expressly state that "[t]his is *not* an attorney zealously advocating for the position of their client[,]" but instead represents the actions of "several arms of DDOE collectively making changes to diminish a student's rights upon filing a complaint." (*Id.* at ¶ 137) (emphasis added). The pleaded averments plausibly allege that the retaliation counterclaims are directed to the actions of APER and the DDOE, as opposed to the Deputy Attorneys General. Consequently, the DDOE's motion to dismiss Counts II and IV of C.G.'s counterclaims based on improper joinder is DENIED.[3]

13. ***Failure to state a claim.*** The DDOE contends that C.G.'s counterclaims contain insufficient facts to support a claim for retaliation under either the Rehabilitation Act or the ADA. (D.I. 27 at 4) The parties agree that the elements of a cause of action for retaliation under both the Rehabilitation Act and the ADA are similar. (*Id.*; D.I. 29 at 5) To state a claim for retaliation under Section 504 of the Rehabilitation Act, a plaintiff must allege that: (1) he engaged in a protected activity; (2) the retaliatory action was sufficient to deter a person of ordinary firmness from exercising his rights; and (3) there was a causal connection between the two. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). The elements of a cause of action for retaliation under the ADA likewise require a showing that:

---

[3] Having determined that the DDOE was properly joined to C.G.'s counterclaims under Rule 13, the court need not reach APER's alternative argument that the counterclaims should be treated as a third-party complaint under Rule 14. (D.I. 27 at 2-3) APER did not pursue its argument under Rule 14 in its reply brief. (D.I. 30)

6

(1) the plaintiff engaged in protected activity; (2) the plaintiff was subject to an adverse action either after or contemporaneous with the protected activity; and (3) a causal connection existed between the protected activity and the adverse action. *See Stouch v. Twp. of Irvington*, 354 F. App'x 660, 667 (3d Cir. 2009).

14. The parties do not dispute the first element pertaining to C.G.'s engagement in a protected activity. Regarding the second element, the DDOE contends that the counterclaims do not identify acts that could be considered adverse actions or actions sufficient to deter a person of ordinary firmness from exercising his rights. (D.I. 27 at 5) A review of Counterclaims II and IV in the light most favorable to C.G. as the nonmoving party does not support the DDOE's position.

15. C.G.'s counterclaims plausibly allege that the Delaware Secretary of Education has a long history of issuing subpoenas *duces tecum* in proceedings under the IDEA, and Dr. Holodick issued a subpoena *duces tecum* in response to C.G.'s request consistent with this longstanding practice. (D.I. 23 at ¶¶ 73, 136, 159) The pleading avers that APER largely complied with C.G.'s subpoena *duces tecum* by producing all responsive documents except for emails. (*Id.* at ¶ 77) These allegations, taken as true, support C.G.'s position that service of and compliance with subpoenas *duces tecum* in special education due process proceedings was a standard procedure.

16. The counterclaims further allege that C.G. filed a motion to compel compliance with the subpoena and APER responded with a motion to quash, arguing that Dr. Holodick lacked the authority to issue subpoenas *duces tecum*. (*Id.* at ¶¶ 78-79) The hearing panel contacted the DDOE's Exceptional Children Resources Workgroup ("ECR") for guidance on how to resolve the pending discovery motions and, consistent with APER's position, the ECR opined that Dr.

Holodick lacked the authority to issue subpoenas *duces tecum*. (*Id.* at ¶¶ 82-83) Following this exchange, the hearing panel denied C.G.'s motion to compel and granted APER's motion to quash based on the guidance it received from the ECR. (*Id.* at ¶ 84) C.G.'s counterclaims allege that this sequence of events illustrates how "APER and DDOE retaliated against C.G. by using their influence and authority to interfere in the special education due process hearings and change DDOE's own interpretation of the law and decades-old practice of issuing subpoenas *duces tecum* and allowing Hearing Panels to determine the scope of discovery." (*Id.* at ¶ 136; *see also id.* at ¶ 159)

17. Viewing these allegations in the light most favorable to C.G., it is plausible to infer that the DDOE's course of conduct during the due process proceedings amounts to an adverse action designed to prevent C.G. from obtaining standard discovery. *See Iqbal*, 556 U.S. at 663 ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). It is also plausible to infer that the DDOE sought to deter students from engaging in a protected activity by changing its longstanding discovery practices in response to C.G.'s effort to enforce his subpoena and proceed with his special education due process hearing. *See id.* Consequently, C.G.'s retaliation counterclaims allege plausible facts supporting the second element of retaliation claims under Section 504 of the Rehabilitation Act and the ADA.

18. The DDOE contends that there is no plausible adverse action because C.G. admits that the hearing panel intended to grant APER's motion to quash as "overbroad and unduly burdensome" regardless of the DDOE's assessment regarding the authority to issue subpoenas *duces tecum*. (D.I. 30 at 3) This is a mischaracterization of C.G.'s counterclaim, which states that APER's motion to quash "argu[ed] that the Secretary lacked the authority to issue subpoenas

for documents and, in the alternative, if the Secretary did have the authority, the request is an undue burden." (D.I. 23 at ¶ 79) There is no indication in the counterclaims that the hearing panel considered the merits of APER's alternative argument of undue burden. Instead, C.G.'s pleading states that the hearing panel granted APER's motion to quash based on a "finding that the Delaware regulations do not 'specifically allow for a records subpoena, only a subpoena for a witness' and that there is 'no prehearing discovery in IDEA or in Delaware regulation.'" (*Id.* at ¶ 84)

19. The DDOE makes a cursory argument that C.G.'s counterclaims fail to establish a causal connection between his protected activity and the DDOE's allegedly retaliatory actions in accordance with the third element of retaliation claims under Section 504 of the Rehabilitation Act and the ADA. (D.I. 27 at 9) C.G. responds that an unusually suggestive temporal proximity between the protected activity and the retaliation can be inferred from the DDOE's assertion of its influence to change an established discovery practice relating to subpoenas *duces tecum* when C.G. exercised his rights. (D.I. 29 at 7-8) The DDOE does not counter C.G.'s argument in its reply brief. (D.I. 30)

20. C.G.'s counterclaims plausibly allege a causal connection between his protected activity and the DDOE's retaliatory conduct, stating that the case involves "several arms of DDOE collectively making changes to diminish a student's rights upon filing a complaint." (D.I. 23 at ¶ 137) C.G.'s pleading alleges that APER historically entertained subpoenas *duces tecum* and largely complied with C.G.'s subpoena before APER challenged Dr. Holodick's authority to issue subpoenas *duces tecum* once C.G. moved to compel the production of emails and the DDOE supported APER's position. (*Id.* at ¶¶ 73-84) These allegations are "sufficient to raise the inference that [C.G.'s] engagement in a protected activity was the *likely reason*" for the

9

adverse action. *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 253 (3d Cir. 2017) (emphasis in original).

21. The counterclaims also allude to the fact that Delaware Deputy Attorneys General represented both Dr. Holodick and the DDOE's ECR Workgroup. (D.I. 23 at ¶¶ 79-80) Citing case authority, the DDOE argues that this does not present a conflict of interest. (D.I. 27 at 6) C.G. suggests that these appearances bolster his position that the DDOE's actions in his due process proceeding were not neutral. (D.I. 29 at 9-10) However, C.G. acknowledges that this potential conflict is not the basis of his challenge to the hearing panel's decision as a violation of his right to due process. (*Id.* at 9) Regardless of any association between the representatives of Dr. Holodick and the DDOE's ECR Workgroup, C.G.'s counterclaim plausibly avers that the DDOE and APER interfered in his special education due process hearing by changing a longstanding discovery practice in retaliation for C.G.'s engagement in protected activity. (D.I. 23 at ¶¶ 136, 159)

22. For the first time in its reply brief, the DDOE challenges the viability of C.G.'s retaliation counterclaims based on the injunctive relief sought against the DDOE. (D.I. 30 at 3) "Arguments raised for the first time before a district court in a reply brief are deemed forfeited." *In re Niaspan Antitrust Litig.*, 67 F.4th 118, 135 (3d Cir. 2023); *see also* D. Del. LR 7.1.3(c)(2) ("The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief."). The DDOE forfeited its arguments based on C.G's request for injunctive relief.

**23. Conclusion.** For the foregoing reasons, IT IS ORDERED that the DDOE's motion to dismiss Counts II and IV of C.G.'s counterclaims is DENIED. (D.I. 27)

_____
Sherry R. Fallon
United States Magistrate Judge